No. 25-1098

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

JOSEPH T. CARMACK,

Plaintiff – Appellant,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, THE
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL
RAILROAD PASSENGER CORPORATION, MASSACHUSETTS BAY
COMMUTER RAILROAD CO., AND KEOLIS COMMUTER SERVICES,

Defendants – Appellees.

_____

On Appeal from the U.S. District Court for the District of Massachusetts
Hon. Leo T. Sorokin, presiding

## BRIEF OF DEFENDANT-APPELLEE BROTHERHOOD OF
## LOCOMOTIVE ENGINEERS AND TRAINMEN

_____

Joshua D. McInerney (#1214845)
Wentz, McInerney, Peifer & Petroff, LLC
14 E. Gay St, FL 4
Columbus, OH 43215
Tel: 614-756-5566
jmcinerney@lawforlabor.com

Michael T. Anderson (#107583)
Murphy Anderson PLLC
33 Harrison Ave., 7th Floor
Boston, MA 02111
Tel.: 617-227-5720
manderson@murphypllc.com

*Attorneys for Defendant-Appellee*
*Brotherhood of Locomotive Engineers and Trainmen*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, the undersigned certifies that Brotherhood of Locomotive Engineers and Trainmen (BLET) is an unincorporated labor organization. It is affiliated with the International Brotherhood of Teamsters. The BLET has not issued shares, bonds or other securities, and has no parent companies, subsidiaries, or affiliates which have issued any shares or securities.

/s/ Joshua D. McInerney
Joshua D. McInerney

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the application of well-established principles of law, oral argument is unnecessary to aid the Court's decisional process.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................................1

STATEMENT OF THE ISSUES ..............................................................................2

STATEMENT OF THE CASE...................................................................................3

STANDARD OF REVIEW ......................................................................................6

SUMMARY OF THE ARGUMENT ........................................................................7

ARGUMENT ...........................................................................................................8

   I. THE DISTRICT COURT CORRECTLY DENIED CARMACK'S MOTION
      FOR LEAVE TO AMEND BECAUSE HIS PROPOSED AMENDMENTS
      WERE FUTILE AND HIS CLAIMS UNTIMELY. ...........................................8

    A. Motions to Amend Must Be Denied as Futile Where the Amendments
       Would Not State a Claim Under Rule 12(b)(6)............................................8

    B. Carmack's Amended Allegations Fail to State a Claim for Breach of the
       Duty of Fair Representation Because They Are Time-Barred, and Time-
       Barred Claims Do Not State a Claim Under Rule 12(b)(6). ........................9

    C. The Statute of Limitations for Breach of the Duty of Fair Representation
       Is Six Months. ...........................................................................................10

    D. The Vast Majority of Carmack's Allegations Concern Events that
       Occurred Decades Ago and Are Therefore Time-Barred by the
       Six-Month Statute of Limitations..............................................................11

    E. Carmack's Mailing and Emailing of a New Grievance to the BLET in
       September and October 2023 After Failing to Be Rehired by Amtrak in
       2023 Cannot Serve to Revive His Time-Barred Claims of a Breach of
       the Duty of Fair Representation Against the BLET. ..................................14

  II. THE DISTRICT COURT CORRECTLY DENIED CARMACK'S
      MOTION FOR LEAVE TO AMEND BECAUSE BLET DID NOT OWE
      CARMACK A DUTY OF FAIR REPRESENATATION IN 2023 AND
      CARMACK'S OTHER CLAIMS AGAINST BLET WERE TIME
      BARRED. ....................................................................................................16

    A. BLET Did Not Owe Carmack a Duty of Fair Representation in 2023
       because he Was Not a Member of the Represented Bargaining Unit, but
       Only an Applicant for Employment. ..........................................................16

    B. Plaintiff's Claims Under Anti-Discrimination Laws are also Time-Barred
       Under any of the Statutes Arguably Invoked. ...........................................18

    C. Carmack's Attempt to Petition for Review of Award No. 382 Upholding
       His Termination from Amtrak Under the Railway Labor Act in 2003 Had

    to Be Filed No Later than 19 Years Ago, or Within 2 Years of the Issuance of the Award in 2003. .................................................................................19

CONCLUSION ..................................................................................................22

## TABLE OF AUTHORITIES

## CASES

*Adams v. Budd Co.,* 846 F.2d 428 (7th Cir. 1988)...................................................15

*Air Line Pilots Ass'n v. U.S. Airways Grp.*, 609 F.3d 338 (4th Cir. 2010) ..............19

*Amyndas Pharma., S.A. v. Zealand Pharma A/S*, 48 F.4th 18 (1st Cir. 2022)………9

*Baltrusaitis v. Int'l Union, UAW*, 86 F.4th 1168 (6th Cir. 2023) ...........................15

*Benoni v. Bos. and Me. Corp.*, 828 F.2d 52 (1st Cir. 1987) ....................................10

*Bensel v. Allied Pilots Association,* 387 F.3d 298 (3d Cir. 2004) ...........................17

*Bhd. of Locomotive Eng'rs Gen. Comm. Of Adj. v. Union Pac. R.R.*, 522 F.3d 746

   (7th Cir. 2008)....................................................................................................19

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R.*, 373 U.S. 33 (1963).....21

*Breiding v. Eversource Energy,* 939 F.3d 47 (1st Cir. 2019).....................................6

*Bryan v. Allied Pilots Ass'n*, No. 17-CV-12460, 2020 WL 3182881
(D. Mass. June 15, 2020), *aff'd sub nom. Bryan v. Am. Airlines, Inc.*,
988 F.3d 68 (1st Cir. 2021) .................................................................................11

*Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82 (1st Cir. 2015)...................6

*Christiansen v. APV Crepaco, Inc.,* 178 F.3d 910 (7th Cir. 1999)................... 12, 13

*Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299 (1989) ........20

*DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983).....................10

*Felice v. Sever*, 985 F.2d 1221 (3d Cir. 1993)..........................................17

*Foman v. Davis*, 371 U.S. 178 (1962).......................................................8

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996)..............................9

*Harry v. Countrywide Home Loans, Inc.,* 902 F.3d 16 (1st Cir. 2018)......................6

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ..........................................19

*Johnson v. Boston Public Schools*, 906 F.3d 182 (1st Cir. 2018) ..............................6

*Kaufman v. Perez*, 745 F.3d 521 (D.C. Cir. 2014) ...................................................18

*Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29 (1st Cir. 2022) ...............6

*Local No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411 (1960).........15

*McNamara-Blad v. Assoc. of Prof. Flight Attdts.*, 275 F.3d 1165
(9th Cir. 2002) ...........................................................................................17

*Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir. 1993) ........... 12, 13, 15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .................................18

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011)............................6

*Ray Lewis v. Local Union 100*, 750 F.2d 1368 (7th Cir. 1984) ..............................15

*Simo v. UNITE, Southwest Dist. Council*, 322 F.3d 602 (9th Cir. 2003) ................18

*Sutherland v. Day & Zimmerman, Inc*., 894 F. Supp. 1488 (D. Kan. 1995)...........15

*Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc*., 524 F.3d 315 (1st Cir. 2008) ......10

*Yordán v. Am. Postal Workers Union, AFL-CIO*, 293 F.R.D. 91
(D.P.R. 2013) ...........................................................................................11, 13

## **STATUTES**

28 U.S.C. § 1291 ........................................................................2

45 U.S.C. § 153 ........................................................................20

Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*........................................9, 19

## JURISDICTIONAL STATEMENT

This case comes before the First Circuit on appeal following the District Court of Massachusetts's order dated November 21, 2024, which denied Plaintiff Joseph Carmack's ("Carmack") Motion for Leave to Amend his previously dismissed Complaint against Massachusetts Bay Transit Authority ("MBTA"), Massachusetts Bay Commuter Railroad ("MBCR"), and Keolis Commuter Services ("Keolis"), Appellant's Appendix at p. 1, and its order dated January 23, 2025, which likewise denied Carmack's Motion for Leave to Amend his previously dismissed Complaint against the Brotherhood of Locomotive Engineers and Trainmen ("BLET"). Appellant's Appendix at p. 9. Upon denying all pending motions and ruling on all outstanding issues, the district court dismissed the action in its entirety. Appellant's Appendix at p. 13.

Prior to the district court's dismissal of the entire action on January 23, 2025, Carmack prematurely appealed the action in the First Circuit on December 13, 2024, and appellees BLET and National Railroad Passenger Corporation ("Amtrak") filed Motions to Dismiss the appeal for lack of jurisdiction on December 31, 2024, and January 7, 2025, respectively. That improvidently filed appeal was dismissed for lack of jurisdiction on January 27, 2025, because claims were still pending at that time before the district court.

Following the order from the district court dismissing the entire action on January 23, 2025, Carmack appealed the action again on March 18, 2025. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because this is an appeal from a final order of the district court. Upon review of the analysis outlined within the district court's order, the First Circuit should affirm the district court's order denying Carmack's Motion for Leave to Amend and its dismissal of the case for the same reasons outlined therein.

## STATEMENT OF THE ISSUES

1) Did the district court correctly deny Carmack's Motion for Leave to Amend as to Carmack's proposed claims against the BLET based on timeliness?

2) Did the district court correctly deny Carmack's Motion for Leave to Amend as to Carmack's proposed claim of an owed duty of fair representation at the relevant times?

3) Did the district court correctly deny Carmack's Motion for Leave to Amend as to Carmack's proposed claims against the BLET based on a failure to state a claim?

4) Did the district court correctly dismiss the action insofar as it pertains to BLET as the Defendant/Appellee?

## STATEMENT OF THE CASE

Carmack was hired by Amtrak as a Locomotive Engineer in December 1996 and became a member of BLET on or about March 1998. Appellant's Brief at p. 4. Carmack was terminated by Amtrak on or about May 13, 2002. Id at p. 29. Following his termination, the BLET submitted Carmack's discipline for expedited arbitration to System Board of Adjustment No. 928 ("SBA No. 928") as Case No. 382. Id. at p. 19. Carmack's case was presented to SBA No. 928 on September 23, 2002, with Martin H. Malin as the Chairman and Neutral Member of the Board. Id. at p. 45.

Award No. 382 was issued by SBA No. 928 on April 21, 2003. BLET's Addendum at A 3 - SBA Award, and A 1 - Declaration of G. Ross. In Award No. 382, the SBA denied the "[c]laim of Amtrak Passenger Engineer J. T. Carmack for the rescinding of the discipline imposed of 'Dismissal in all capacities effective immediately' as stated in the decision letter of May 13, 2002 under the signature of Assistant General Manager-Commuter Operations Francis J. O'Connor, Jr." Id. at A 3. In denying Carmack's claim for rescinding his dismissal, the SBA held, "we conclude that Carrier proved the charge by substantial evidence. The claim must be denied." Id. at A 6. Since July 18, 2003, the BLET has taken no action to pursue his grievances or his reinstatement as a Locomotive Engineer following his termination by Amtrak. Appellant's Appendix at p. 2.

On March 13, 2023, nearly 20 years after the issuance of Award No. 382 upholding his termination from Amtrak, Carmack applied to be rehired by Amtrak. Appellant's Brief at p. 21. Amtrak declined to rehire Carmack on or about April 2, 2023. Id. Carmack then attempted to file a grievance over the failure to rehire him on September 1, 2023, and mailed a copy of the purported grievance to the BLET on September 22, 2023. Id. However, the BLET has not contacted Carmack regarding any grievances he has filed since 2003. Id at p. 21-22.

Carmack then filed his original Complaint in the district court on March 8, 2024. Appellant's Brief at p. 21. After a period of motion practice, including a Motion for Leave to Amend the Complaint and Proposed Amended Complaint filed by Carmack on November 13, 2024, the district court dismissed the action in its entirety through two orders, one dated November 21, 2024, and one dated January 23, 2025, the latter of which dismissed all claims against BLET. Appellant's Appendix at p. 1 and p. 9. In its January 23, 2025, Order, the district court stated, "this lawsuit amounts to an attempt by plaintiff Joseph Carmack to resuscitate and enlarge claims he litigated two decades ago against a former employer and other related entities." Id. at p. 9.

In its analysis of Carmack's claims against BLET, the court wrote, "Carmack's proposed claims against his former union, the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), fail for reasons the BLET ably articulates in its opposition

papers." Appellant's Appendix at p. 9. A footnote at the end of this sentence elaborated: "Having reviewed both parties' submissions and the relevant sources of law cited therein, the Court agrees with and incorporates by reference the BLET's analysis of the deficiencies in Carmack's proposed amendment insofar as the claims against the union are concerned. See generally Doc. No. 115." Id. p. 9. BLET's Opposition to Carmack's Motion for Leave to Amend and its analysis of the deficiencies in Carmack's proposed amendment adopted and incorporated into the district court's Order is found at ECF Doc. No. 115 of the district court record.

The Court concluded that Carmack's claims were, therefore, untimely, and held:

> His attempts to evade the long-expired statutes of limitations by reasserting the same grievances under the guise of new job applications to his former employer fail as a matter of law. Were there a basis to excuse his lateness (and the Court finds none), Carmack has not plausibly alleged the BLET owed him a duty of fair representation at the relevant times. See Doc. No. 55 at 147 (reflecting Carmack has not been employed by any railway company since 2001). Nothing in Carmack's reply brief or the hundreds of pages of supporting exhibits alters those conclusions or requires further exploration via a motion hearing. See Doc. No. 127 at 20 (requesting oral argument); Doc. Nos. 128, 128-1 to -3. Accordingly, the Motion for Leave to Amend is DENIED as to Carmack's proposed claims against the BLET.

Appellant's Appendix at p. 10.

To the extent that the district court found BLET's arguments in opposition to Carmack's Motion for Leave to Amend persuasive such that it incorporated them by reference into its January 23, 2025, order, BLET reiterates them in its foregoing

analysis. This Court should similarly find that Carmack's claims should be dismissed and affirm the district court's Order insofar as it pertains to BLET.

**<u>STANDARD OF REVIEW</u>**

The First Circuit Court of Appeals reviews a district court's denial of a motion for leave to amend a complaint similarly to a grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6) – that is, on a *de novo* basis. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022); *Harry v. Countrywide Home Loans, Inc.,* 902 F.3d 16, 18 (1st Cir. 2018); *Johnson v. Boston Public Schools*, 906 F.3d 182, 191 (1st Cir. 2018). The court assumes that all plead facts and reasonable inferences drawn from them are true. *See Breiding v. Eversource Energy,* 939 F.3d 47 49, 52 (1st Cir. 2019); *Legal Sea Foods*, 36 F.4th at 34. A complaint must "possess enough heft to show that the pleader is entitled to relief." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 8 (1st Cir. 2011). If, having reviewed the complaint, it does not provide "enough factual detail to make the asserted claim plausible on its face," *Legal Sea Foods,* 36 F.4th at 33 (internal quotation marks omitted) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)), then the appeal should be denied and the district court's order should be affirmed.

# SUMMARY OF THE ARGUMENT

This case is an attempt by Carmack to pursue untimely duty of fair representation and discrimination allegations against BLET, his former union, that were raised over 20 years after the alleged acts in question. The allegations in his complaint fail to state a claim because they are time-barred and extend significantly beyond the six-month statute of limitations for duty of fair representation claims and for any discrimination claims which are also time barred within 20 years. Carmack also cannot establish that BLET owed Carmack any duty of representation for the time period falling within the limitations period preceding the filing of his complaint in this matter.

Indeed, the only conduct by the BLET identified in the proposed First Amended Complaint that could even remotely be considered within the duty of fair representation's ("DFR") six-month statute of limitations is Carmack's assertion that after he applied to be rehired by Amtrak in 2023 and Amtrak refused to do so, he then mailed and emailed a grievance to various BLET offices in September and October 2023, but he received no response. The fatal flaw with this claim, however, is that Carmack asserts no facts whatsoever occurring within the limitations period of how the BLET allegedly sought vengeance against him with the Rail Carrier Defendant-Appellees to prevent his rehire, other than reiterating that the BLET continued to ignore and refuse to process his grievances as it had done for the prior

20 years following his termination. This continued refusal of the BLET in 2023 to act on Carmack's grievances arising twenty years earlier cannot serve to revive his long since time-barred claims of a DFR violation by BLET, for reasons that are outlined in further detail below.

Further, Carmack's allegations that the Special Board of Adjustment arbitration award that upheld his termination from Amtrak in 2003 is invalid are without merit. The statute of limitations for challenging that award under the Railway Labor Act is two years, and that period has also long since run.

For all the foregoing and following reasons, this Court should affirm the district court's order dismissing all claims against BLET in their entirety.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY DENIED CARMACK'S MOTION FOR LEAVE TO AMEND BECAUSE HIS PROPOSED AMENDMENTS WERE FUTILE AND HIS CLAIMS UNTIMELY.

#### A. Motions to Amend Must Be Denied as Futile Where the Amendments Would Not State a Claim Under Rule 12(b)(6).

Motions to amend will not be allowed when they are a result of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is settled law that proposed

amendments are futile, and thus must be denied, if they fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Amyndas Pharmaceuticals, S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 22 (1st Cir. 2022). "In reviewing for 'futility,' the same standard of legal sufficiency applies as applies to a Rule 12(b)(6) motion." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Applying the 12(b)(6) motion standard to the proposed First Amended Complaint, Carmack's claims still fail to state a claim against BLET. Thus, the district court correctly denied his Motion for Leave to Amend for failure to state a claim.

> **B.**     **Carmack's Amended Allegations Fail to State a Claim for Breach of the Duty of Fair Representation Because They Are Time-Barred, and Time-Barred Claims Do Not State a Claim Under Rule 12(b)(6).**

Carmack alleges in his proposed First Amended Complaint that BLET violated its duty of fair representation ("DFR") toward him by failing to process his various grievances and by cutting off all communications with him after July 2003 shortly after his termination from Amtrak was upheld by SBA No. 928 in Case No. 382 on April 21, 2003. The facts he alleges and his claims, however, are barred by the six-month statute of limitations for a claim for breach of the DFR, which ran out over 20 years ago. Thus, the proposed amendments in his First Amended Complaint are futile. "Affirmative defenses, such as the statute of limitations, may be raised in a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" *Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008).

### C. The Statute of Limitations for Breach of the Duty of Fair Representation Is Six Months.

It is well settled that the statute of limitations for claims against a union alleging a breach of the DFR under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, is six months. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983); *Benoni v. Bos. and Me. Corp.*, 828 F.2d 52, 56 (1st Cir. 1987) (internal quotation marks and citations omitted) (noting that "[a]lthough the RLA has no statute of limitations of its own, the courts ...A have borrowed the six-month limitations period of section 10(b) of the National Labor Relations Act ... and applied it to actions claiming unfair labor practices under the 'RLA'"). A cause of action against a union for breach of the DFR arises "when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *DelCostello* at 157.

This Court may therefore only consider claims related to conduct occurring in the six months prior to the initiation of the initial Complaint on March 8, 2024, *i.e.,* conduct occurring on or after September 8, 2023. All Carmack's allegations related to conduct prior to September 8, 2023, are time-barred.

**D.** **The Vast Majority of Carmack's Allegations Concern Events that Occurred Decades Ago and Are Therefore Time-Barred by the Six-Month Statute of Limitations.**

In his appellate brief, Carmack alleged that BLET failed to represent him and failed to process his grievances related to his termination by Amtrak in 2002 and through the issuance of Award No. 382 in April 2003 that upheld his termination. Since 2003, BLET has taken no action to pursue his grievances or reinstate his employment as a Locomotive Engineer following his termination by Amtrak. Appellant's Appendix at p. 21-22. Indeed, there is not one single allegation in the brief by Carmack of the BLET contacting Carmack or responding to him about his grievances after 2003.

As a general matter, "a duty of fair representation claim accrues, and the six-month limitations period commences when the futility of further union appeals becomes apparent or should have become apparent." *Bryan v. Allied Pilots Ass'n*, No. 17-CV-12460, 2020 WL 3182881, at *5 (D. Mass. June 15, 2020), *aff'd sub nom. Bryan v. Am. Airlines, Inc.*, 988 F.3d 68 (1st Cir. 2021) (internal quotation marks omitted). In *Yordán v. Am. Postal Workers Union, AFL-CIO*, 293 F.R.D. 91, 98 (D.P.R. 2013), the court emphasized that "over two years elapsed" between the plaintiff's last communication with the union and the institution of the lawsuit, and that "[t]his extensive period of inaction should have indicated to [Plaintiff] Yordán that the Union may have breached its duty of fair representation, triggering the

statute of limitations." The court in *Yordan* followed in the reasoning of *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir. 1993), where the Seventh Circuit found, at the motion to dismiss stage, "that a mere seven months of inactivity was sufficient to put the plaintiff on notice that the union breached its duty." *Id.* at 98 (citing *Metz*, 715 F.2d at 304). Similarly, in *Christiansen v. APV Crepaco, Inc.,* 178 F.3d 910, 914-15 (7th Cir. 1999), the Seventh Circuit held that "a year of inactivity by the union, among other things, should have signaled to the plaintiff that the union had breached its duty."

Turning to Carmack's DFR claim, the BLET's failure to respond to Carmack or communicate in any way with him since 2003, should have put Carmack on notice long ago that the BLET may have breached its DFR, thus triggering the statute of limitations no later than late 2003 or early 2004. Certainly, a period of 21 years elapsing from the BLET's last communication with Carmack and the institution of his lawsuit in March 2024 amply demonstrates that Carmack was on notice over two decades ago that the BLET would not be pursuing any of his grievances or his reinstatement to Amtrak.

Carmack also mailed a letter with a copy of the grievances and exhibits to BLET Division 57 in September 2023. Appellant's Brief at p. 21. The letter provides further evidence of Carmack's knowledge and awareness of the fact that the BLET did not consider him to be a member and had refused to pursue any of his grievances

since 2003. In his September 22, 2023, letter, Carmack states, "[t]he issues related to the current grievance were submitted to BLET57 as a grievance filed with MCBR and submitted to BLET57 at a meeting held on or about June 13, 2003. In the 2003 meeting, the chair of the meeting, Dan Murphy, declared that BLET57 would not assist with my grievance because Murphy and Local Chairman Mike O'Bryan denied the legitimacy of my membership." BLET Addendum at A 7. He therefore admits that on June 13, 2003, he was placed on unequivocal notice that the BLET did not consider him to be a member and, therefore, was refusing to pursue any of his grievances. Nothing has changed in the last 20 years on this point.

Additionally, on page 2 of the letter, Carmack wrote, "[t]he same grievance was also submitted to Mark Kenny a month later. I also asked Kenny for assistance with a large number of grievances the carriers had on hold. In a letter responding to me, Kenny stated that he 'fully intends' to give my concerns 'the attention and consideration they properly deserve'. His twenty years of silence has clarified the level of attention he believes section 36 of the BLET constitution deserves." Id. at A 8. Carmack's twenty years of silence has clarified the level of attention he believes his case deserves. Carmack has long been on notice that the BLET may have breached its DFR, thus triggering the statute of limitations long ago. *See, e.g., Yordán*, 293 F.R.D. at 98; *Christiansen,* 178 F.3d at 914-15; *Metz*, 715 F.2d at 304. Indeed, twenty years of silence is an apt description for Carmack's filing of his

litigation against the BLET as well. Accordingly, Carmack's DFR claims are time-barred under the six-month statute of limitations and were correctly dismissed by the district court.

> **E.** **Carmack's Mailing and Emailing of a New Grievance to the BLET in September and October 2023 After Failing to Be Rehired by Amtrak in 2023 Cannot Serve to Revive His Time-Barred Claims of a Breach of the Duty of Fair Representation Against the BLET.**

The only conduct by the BLET identified in the proposed First Amended Complaint that could even remotely be considered within the DFR's six-month statute of limitations is Carmack's assertion that after he applied to be rehired by Amtrak in 2023 and Amtrak refused to do so, Appellant's Brief at p. 21, he then mailed and emailed a grievance to various BLET offices in September and October 2023, but he received no response. Id. Carmack claims that the BLET's ongoing refusal to pursue his rehire grievance supposedly demonstrates that BLET and Amtrak have aggressively sought vengeance against the Plaintiff's union activities. Id at p. 39.

The continued problem with this claim, however, is that Carmack asserts no facts whatsoever occurring within the limitations period of how the BLET allegedly sought vengeance against him with the Rail Carrier Defendant-Appellees to prevent his rehire, other than reiterating that the BLET continued to ignore and refuse to process his grievances as it had done for the prior 20 years following his termination.

This continued refusal of the BLET in 2023 to act on Carmack's grievances arising twenty years earlier cannot serve to revive his long since time-barred claims of a DFR violation by BLET because "continued union inactivity after an initial failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation." *Adams v. Budd Co.,* 846 F.2d 428, 431 (7th Cir. 1988). A DFR plaintiff cannot continually reset the statute of limitations by filing what are essentially identical successive grievances. *See Baltrusaitis v. Int'l Union, UAW*, 86 F.4th 1168, 1176-76 (6th Cir. 2023); *Sutherland v. Day & Zimmerman, Inc*., 894 F. Supp. 1488, 1493 (D. Kan. 1995) ("The [DFR] plaintiff cannot toll the statute of limitations by repeatedly filing grievances on the same issue or other issues.") (citing cases).

A continuing violation requires unlawful acts to occur within the limitations period. *See Local No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 422 (1960). As the Supreme Court explained, there is no continuing violation sufficient to delay the statute of limitations if the conduct within the six-month period is only unlawful in light of conduct outside of the six-month period. *Id.*; *see also Ray Lewis v. Local Union 100*, 750 F.2d 1368, 1369 (7th Cir. 1984). And, in the instant case, the BLET's refusal to process his rehire grievance could only constitute a breach of the DFR "by reason of circumstances existing at or before [the start of the limitations period]." *Metz,* 715 F.2d at 306. Thus, Carmack's purported right to rehire, to the

extent that he had one at all (which he did not), would only have been triggered from the date of his termination and arbitration decision over his termination grievance in 2003.

## II. THE DISTRICT COURT CORRECTLY DENIED CARMACK'S MOTION FOR LEAVE TO AMEND BECAUSE BLET DID NOT OWE CARMACK A DUTY OF FAIR REPRESENTATION IN 2023 AND CARMACK'S OTHER CLAIMS AGAINST BLET WERE TIME BARRED.

### A. BLET Did Not Owe Carmack a Duty of Fair Representation in 2023 because he Was Not a Member of the Represented Bargaining Unit, but Only an Applicant for Employment.

Carmack presumes that he was an ongoing member of the BLET-represented bargaining unit at Amtrak for 20 years following the date that his termination was upheld in arbitration by the SBA in Award No. 382. BLET's Addendum at A 3. As a result, he claims that he can bring suit against BLET for breach of the DFR because he applied for an Amtrak job in 2023 and did not get it. Appellant's Brief at p. 39-40.

This claim fails because he was not employed in a BLET-represented bargaining unit in 2023 or at any time since his termination from Amtrak was upheld in arbitration in 2003. Carmack claims that Amtrak's refusal to rehire him violates his "seniority rights" under the CBA, ignoring that once he was terminated in 2003 and that termination was upheld in arbitration before the SBA, he was no longer

covered by the CBA nor included in the BLET-represented bargaining unit at Amtrak. He therefore has no claim that he retained some shadow seniority rights dating back to his former employment. Unions owe a DFR only to employees in a bargaining unit for which the union has exclusive representation. "The duty of fair representation arises from a union's statutory role as the exclusive bargaining representative for a unit of employees." *McNamara-Blad v. Assoc. of Prof. Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002). Thus, a union's DFR does not extend to people who are not employees in the bargaining unit. "It is actual inclusion in the bargaining unit-not 'impending' inclusion-that triggers attachment of the duty of fair representation." *Bensel v. Allied Pilots Association,* 387 F.3d 298, 314 (3d Cir. 2004) (following *McNamara-Blad*).

Moreover, applicants for jobs are not covered by the DFR, even where they are otherwise paying dues to the union. On this issue, *Felice v. Sever*, 985 F.2d 1221, 1228 (3d Cir. 1993), is directly on point. In *Felice*, the court considered whether an applicant for a police job, who had been previously employed at another union job and retained his union membership, could maintain a DFR claim against his union, which did not approve his application for the new job. *Id.* at 1223–24. The Third Circuit held that the plaintiff could not maintain a DFR claim because the union was not acting in a representative capacity when Felice applied for the job, notwithstanding the "happenstance" that he was still a member of the union. *Id.* at

1228–29. As in *Felice*, Carmack's membership, or former membership, in the BLET did not trigger any representative obligations of BLET to Carmack at the time that he applied to Amtrak in 2023 because he was not employed in any BLET-represented bargaining unit nor has he alleged to have been at that time. *See also Simo v. UNITE, Southwest Dist. Council*, 322 F.3d 602, 614 (9th Cir. 2003) (citing *Felice*). The fact of the matter is that Carmack's claim that Amtrak's refusal to rehire violates his seniority rights ignores that once he was terminated more than twenty years ago and that termination was upheld in arbitration under the RLA, he no longer had any shadow seniority dating back to his former employment.

**B.    Plaintiff's Claims Under Anti-Discrimination Laws are also Time-Barred Under any of the Statutes Arguably Invoked.**

Plaintiff also once again appears to assert he was discriminated against by BLET because of his religion or on some other basis protected by anti-discrimination laws. But all relevant statutes he can possibly rely on have statues of limitations of far less than 20 years. *See, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Plaintiff may not complain that BLET discriminated against him in 2003, but "continued" its violation for 20 years as he repeatedly complained about the original decision. *See Kaufman v. Perez*, 745 F.3d 521, 530 (D.C. Cir. 2014) ("A terminated employee, whether or not he had a valid claim in his termination, cannot come back later and revive a barred claim simply by asking, 'Am I still fired?'")

Plaintiff simply complains of BLET's inaction to change a decision made 20 years before that is time-barred under any applicable statute.

C. **Carmack's Attempt to Petition for Review of Award No. 382 Upholding His Termination from Amtrak Under the Railway Labor Act in 2003 Had to Be Filed No Later than 19 Years Ago, or Within 2 Years of the Issuance of the Award in 2003.**

Disputes between railroads and employees are governed by the RLA, 45 U.S.C. § 151 *et seq*. The RLA is intended "to promote stability in labor management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). Federal policy favoring arbitration "has special importance in the rail and air industries, where failure to resolve labor disputes in a 'prompt and orderly' manner may 'interrupt[] . . . commerce' and thus adversely affect the public interest in traveling and shipping." *Air Line Pilots Ass'n v. U.S. Airways Grp.*, 609 F.3d 338, 341 (4th Cir. 2010) (quoting 45 U.S.C. § 151a). Before initiating arbitration, the railroad and the employee's labor representative will attempt to resolve the dispute through an internal process set forth in the collective bargaining agreement ("CBA"). *See Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R.*, 522 F.3d 746 (7th Cir. 2008). That process includes "investigations, hearings, and appeals that take place on the railroad property and are generally referred to as 'on-property' proceedings." *Id* at p. 748.

Labor disputes which cannot be resolved during on-property proceedings can be referred to a Special Board of Adjustment ("SBA"), which functions as an arbitration board. "Referring arbitrable matters to the [SBA] . . . assur[es] that collective-bargaining contracts are enforced by arbitrators who are experts in 'the common law of [the] particular industry.'" *Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 310 (1989). Carmack's 2003 arbitration before the SBA over his 2002 termination by Amtrak resulting in Award No. 382 was such an award governed by the RLA.

Pursuant to RLA Section 153, First (m), a decision of an SBA is "final and binding upon both the parties to the dispute." 45 U.S.C. § 153, First (m). Where an employee is dissatisfied with an SBA's award, he can file a petition for judicial review of the award, but it must be filed within two years of the award. *See* 45 U.S.C. § 153, First (r) ("All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.")

Despite the statutory mandate of RLA Section 153, First (m) that SBA Awards are "final and binding" on the parties to the dispute, Carmack asserts, in a conclusory fashion, that Award No. 382 should have been expunged for failing to comply with the CBA between Amtrak and BLET. Appellant's Brief at p. 46. Indeed, it is clear that Carmack's concerns about the validity of Award No. 382 arise out of the

"interpretation or application" of the CBA. In fact, Plaintiff explicitly references the purported applicable rules and sections of the CBA that he asserts were violated by Award 382. Id at p. 47-48. In arguing that the Board failed to issue a timely decision with respect to his termination, Carmack cites Rule 21 of the CBA. Id at p. 50. He also challenges Amtrak's decision to terminate his employment based on his conduct. In doing so, he asks this Court to interpret the meaning and applicability of the CBA between Amtrak and the BLET, which this Court is not authorized to do. Indeed, Congress intended that the remedies provided by SBAs "to be the complete and final means for settling minor disputes." *Bhd. of Locomotive Eng's v. Louisville & Nashville R.R.*, 373 U.S. 33, 38 (1963).

Further, there is no indication in the record that Carmack or the BLET ever filed a Petition for Review of Award. No. 382 that upheld Carmack's dismissal from Amtrak in 2003. Rather than challenging Award No. 382 no later than 19 years ago (*i.e.*, within 2-years of the Award's issuance) by filing a separate proceeding as Section 153, First (q) requires, Carmack has instead attempted to challenge the SBA Award upholding his dismissal from Amtrack through the instant litigation filed 20 years after the issuance of the SBA's Award. However, to challenge Award No. 382, Carmack had 2 years from its issuance on April 21, 2003, to file for review with a district court. He failed to do so and cannot now claim that Award No. 382 is invalid or that his termination from Amtrak in 2002 should now be overturned. Therefore,

the district court was correct in its dismissal of Carmack's claims on this issue as well.

## CONCLUSION

This Court should affirm the district court's order dismissing the case and all claims insofar as they are directed against BLET.

Date: May 1, 2025

Respectfully submitted,

/s/ *Joshua D. McInerney*
Joshua D. McInerney (#1214845)
Wentz, McInerney, Peifer & Petroff, LLC
14 E. Gay St, Fl 4
Columbus, OH 43215
Tel: 614-756-5566
jmcinerney@lawforlabor.com

Michael T. Anderson (#107583)
Murphy Anderson PLLC
33 Harrison Ave., 7th Floor
Boston, MA 02111
Tel.: 617.227.5720
manderson@murphypllc.com

*Attorneys for Defendant-Appellee*
*Brotherhood of Locomotive Engineers and*
*Trainmen*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32, I certify that this Brief: (1) complies with the type-volume limitations of Fed. R. Appx. P. 32(a)(7)(B) because the brief contains fewer than 13,000 words; and (2) complies with the typeface requirements of Fed. R. Appx. P. 32(a)(5) and the requirements of Fed. R. Appx. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

I also certify that the text of the electronic brief is identical to the text of the paper copies filed with the Court. The electronic brief has been scanned for viruses and no virus was detected.

Dated: May 1, 2025                                  Submitted,


                                                    /s/ *Joshua D. McInerney*_____
                                                    Joshua D. McInerney

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant-Appellee BLET hereby certifies that on May 1, 2025, a true copy of the foregoing Brief was filed with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I further certify that the following parties and counsel of record are registered ECF Filers and will be served by the CM/ECF system:

Joseph T. Carmack
James N. Foster, Jr.
Arturo Alberto Hernandez, III
Paul J. Hodnett
Christopher B. Kaczmarek
Thomas E. Lent
Scott Alan Spencer
Tracy McDevitt Waugh
Bianca Marie Young

/s/ *Joshua D. McInerney*
Joshua D. McInerney

No. 25-1098

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

JOSEPH T. CARMACK,

Plaintiff – Appellant,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, THE
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL
RAILROAD PASSENGER CORPORATION, MASSACHUSETTS BAY
COMMUTER RAILROAD CO., AND KEOLIS COMMUTER SERVICES,

Defendants – Appellees.

―――――――――――――

On Appeal from the U.S. District Court for the District of Massachusetts
Hon. Leo T. Sorokin, presiding
―――――――――――――――――――――

## APPELLEE'S ADDENDUM
―――――――――――――――――――――

Joshua D. McInerney (#1214845)
Wentz, McInerney, Peifer & Petroff, LLC
14 E. Gay St, FL 4
Columbus, OH 43215
Tel: 614-756-5566
jmcinerney@lawforlabor.com

Michael T. Anderson (#107583)
Murphy Anderson PLLC
33 Harrison Ave., 7th Floor
Boston, MA 02111
Tel.: 617.227.5720
manderson@murphypllc.com

Attorneys for Defendant-Appellee
Brotherhood of Locomotive Engineers and Trainmen

# TABLE OF CONTENTS

U.S. District Court for District of Massachusetts, ECF Filing #115-1, Declaration of Greg Ross with Special Board of Adjustment No. Award #382 attached...……………………………………………..…………………………….A 1

U.S. District Court for District of Massachusetts, ECF Filing #63-1, Carmack Exhibit 193 – September 22, 2023, Letter from Carmack to BLET57 ...………………………………………………………………………..….A 7

JOSEPH T. CARMACK,                        )
                                          )
          Plaintiff,                 )
                                          )
      v.                           )     Case No. 1:24-cv-10593-LTS
                                          )
THE BROTHERHOOD OF LOCOMOTIVE             )
ENGINEERS AND TRAINMEN,                   )
MASSACHUSETTS BAY                         )
TRANSPORTATION AUTHORITY,                 )
NATIONAL RAILROAD PASSENGER               )
CORPORATION, MASSACHUSETTS BAY            )
COMMUTER RAILROAD CO. and                 )
KEOLIS COMMUTER SERVICES, LLC,            )
                                          )
          Defendants.                )
_____ )

## DECLARATION OF GREG ROSS

I, GREG ROSS, hereby declare and state as follows:

1.      I am the Director of Legal Affairs for the Brotherhood of Locomotive Engineers and Trainmen. I have held this position since 2016.

2.      As Director of Legal Affairs, I am familiar with and have access to National Railroad Adjustment Board, Public Law Board and Special Board of Adjustment decisions and awards involving the BLET and its subordinate Unions.

3.      Attached to this declaration is a true and correct copy of Special Board of Adjustment (SBA) No. 928 Award No. 382, in which the SBA denied the "[c]laim of Amtrak Passenger Engineer J. T. Carmack for the rescinding of the discipline imposed of 'Dismissal in all capacities effective immediately' as stated in the decision letter of May 13, 2002 under the signature of Assistant General Manager-Commuter Operations Francis J. O'Connor, Jr. . . ."

# EXHIBIT 1

4. The BLET has no record of a petition for review of Award No. 382 ever being filed in federal district court within 2 years of its issuance or at any time thereafter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 14, 2024

_____
GREG ROSS

# NATIONAL MEDIATION BOARD

## SPECIAL BOARD OF ADJUSTMENT NO. 928

BROTHERHOOD OF LOCOMOTIVE ENGINEERS )
                                                ) Case No. 332

and                                                     )

                                                        ) Award No. 382

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) )

Martin H. Malin, Chairman & Neutral Member
M. B. Kenny., Employee Member
L. C. Hriczak, Carrier Member

Hearing Date: September 23, 2002

## STATEMENT OF CLAIM:

Claim of Amtrak Passenger Engineer J. T. Carmack for the rescinding of the discipline imposed of "Dismissal in all capacities effective immediately" as stated in the decision letter of May 13, 2002 under the signature of Assistant General Manager-Commuter Operations Francis J. O'Connor, Jr., and restoration to service with full seniority and vacation rights unimpaired, with full compensation for time lost, full credit toward vacation entitlement, health and welfare benefits during the period held out of work, and clearing Claimant's personal records of any reference to the alleged violation.

## FINDINGS:

Special Board of Adjustment No. 928, upon the whole record and all the evidence, finds and holds that Employee and Carrier are employee and carrier within the meaning of the Railway Labor Act, as amended; and, that the Board has jurisdiction over the dispute herein; and, that the parties to the dispute were given due notice of the hearing thereon and did participate therein.

On September 10, 2001, Claimant was directed to report for an investigation on September 17, 2001. The notice charged Claimant with violating Amtrak's Standards of Excellence, Professional and Personal Conduct, by failing to comply with the direction of the Director of Operations to appear for and cooperate with a fitness for duty evaluation on August 27, 2001.

The hearing was postponed to and begun on April 4, 2002. The hearing continued on April 23 and 24, 2002, and was completed on May 7, 2002. On May 13, 2002, Carrier advised Claimant that he had been found guilty of the charges and dismissed from service.

The record reflects that on April 11, 2001, the Division Road Foreman found a packet of

40 - 50 pages on his desk that was entitled, "Letters from Hell." Claimant was the apparent author of most of the material in the packet, including a parody of Shakespeare's Hamlet, in which the Road Foreman was cast as Rozencrantz and the Local Chairman was cast as Guildenstern, two characters who were killed. The packet also included a letter addressed, "Dear God," which stated, "I hear a fat lady singing," and was closed by "Lucifer, Prince of Darkness." The packet also contained correspondence and related material concerning a dispute Claimant had with Carrier concerning a prior disciplinary action taken against him and material critical of the Local Chairman. The Road Foreman interpreted the packet as a threat against him and reported the matter to the Threat Assessment and Response Team (TART).

The Director of Labor Relations, in his capacity as a member of the TART, determined that the documents should be reviewed by Carrier's Medical Department. He forwarded a small portion of the packet, approximately five pages, consisting of the pages that the Road Foreman had found threatening, to the Medical Department. Carrier's Medical Officer for the Northeast Corridor reviewed the documents and determined that Claimant should be medically disqualified pending a fitness for duty examination.

By letter dated May 4, 2001, the Director of Operations notified Claimant that he had been medically disqualified pending a fitness for duty exam and that he was being withheld from service with pay. By letter dated May 17, 2001, the Director of Operations instructed Claimant to appear for a fitness for duty exam with a Boston doctor on June 4, 2001. The doctor appears, from the record, to be board certified in psychiatry and neurology.

Claimant canceled the June 4, 2001, appointment and refused to reschedule it. By letter dated June 8, 2001, the Director of Operations notified Claimant that, in light of his actions, his status was changed to medically disqualified without pay, and ordered him to contact the Medical Department by June 15, 2001, to reschedule the fitness for duty exam. The letter warned Claimant that his failure to do so would subject him to "charges of insubordination, which, if proved, could result in your permanent dismissal from service."

On June 27, 2001, Claimant appeared at the doctor's office with the Local Chairman. Claimant refused to submit to a psychiatric examination. The doctor notified Carrier's Medical Officer by letter dated July 16, 2001. By letter dated July 24, 2001, the Director of Operations advised Claimant that he was making "one last effort to resolve this matter," and directed Claimant to schedule another appointment with the doctor. The letter further warned Claimant, "If you either fail to appear, refuse to cooperate with the physician, or adopt some other tactic to frustrate this evaluation, I will then place your behavior within the formal process. Such behavior will lead me to issue charges for gross insubordination and possibly other contrary activities."

Claimant and the doctor agreed to an appointment for August 27, 2001. However, by letter dated August 28, 2001, received by Carrier's Medical Department on September 4, 2001, and conveyed to the Director of Operations on September 5, 2001, the doctor advised that Claimant refused to present for the evaluation. Claimant apparently refused to participate in the

evaluation because Claimant objected to the doctor sharing the results with Carrier's Medical Officer on the ground that such action would breach physician-patient confidentiality.

There is no question that Claimant did not comply with the Director of Operation's order of July 24, 2001. Although Claimant testified that he complied by scheduling another appointment with the doctor, it is clear that the order went beyond literally scheduling another appointment and also required Claimant to appear, cooperate with the doctor and not frustrate the evaluation. Claimant clearly did not cooperate and did frustrate the evaluation.

The Organization's position is two fold. First, the Organization contends that the charges were not timely. Second, the Organization maintains that Claimant was not obligated to comply with the order.

Rule 21.d.1 of the Agreement provides, in relevant part:

A Passenger Engineer directed to attend a formal investigation to determine his responsibility, if any, in connection with an act or occurrence will be notified in writing within seven days from the date of the act or occurrence or in cases involving stealing or criminal offense within seven days from the date the Carrier becomes aware of such act or occurrence.

We agree with the Organization that Rule 21.d.1 clearly distinguishes between stealing and criminal offenses on the one hand and all other disciplinary acts or occurrences on the other. It is only in cases of the former that the time limit for providing notice of the charges runs from the date of Carrier's knowledge. Insubordination is not stealing and it is not criminal. Therefore, the time limit starts to run with the act of occurrence, not with Carrier's knowledge of it.

However, we do not agree with the Organization's argument that the charge in the instant case was untimely. The critical question is when was the act or occurrence completed. The Organization maintains that the act or occurrence was complete on August 27, 2001, when Claimant refused to submit to the fitness for duty examination. We do not agree.

Insubordination is a very serious offense that usually results in dismissal. The essence of the offense is not only the failure to comply with an instruction but also the belligerent affront to supervisory authority. Indeed, it is the affront to supervisory authority, the "in your face" character of the offense, that is the source of its seriousness and the justification for the severity of the discipline usually imposed. The affront to authority cannot occur until the supervisor who issued the order is notified of the subordinate's refusal to comply. Had Claimant called the Director of Operations on August 27, 2001, and told the Director he would not cooperate with the examination, the time limits would have run from that date. However, the affront to the Director's authority did not occur until the Director was notified that Claimant had not cooperated with the examination; thus the offense was not complete until September 5, 2001. Accordingly, we conclude that the charge was timely.

-3-

A5

Much of the Organization's contention that Claimant's refusal to comply with the order was not insubordinate consisted of an attack on the order itself. The Organization argued that the Road Foreman overreacted to a humorous parody and noted that the Local Chairman did not consider the parody threatening. The Organization complained that the Medical Director decided to disqualify Claimant and have him examined based on only five pages of a much longer packet that were taken out of context. The Organization further contended that after the Medical Officer disqualified Claimant, Claimant's personal physician wrote that Claimant was qualified for service, thus triggering Rule 25's procedure for a mutually selected third doctor to examine Claimant, rather than a referral to a doctor unilaterally selected by Carrier's Medical Office.

None of these arguments provide a defense to the charge of insubordination. The general rule in labor relations is that an employee, confronted with a directive that he believes violates the Agreement or is otherwise improper, must obey now and grieve later. Claimant deliberately failed to do so.

There is an exception to this general rule which is recognized in Carrier's Standards of Excellence as "when compliance with a particular instruction would cause a clear, immediate danger to you, your fellow employees, our customers, the public or company property." The Organization introduced several letters from Claimant's doctor that stated that submission to the fitness for duty exam would have been medically harmful to Claimant. Claimant's doctor did not testify and the record contains no evidence of the basis for her opinion. The Hearing Officer discounted the probative value of the letters and we find that she acted properly in doing so.

Accordingly, we conclude that Carrier proved the charge by substantial evidence. The claim must be denied.

## AWARD

Claim denied.

_Martin H. Malin_
Martin H. Malin, Chairman


_L. C. Hriczak_
L. C. Hriczak,
Carrier Member

_Mark B. Kenny_
M. B. Kenny,
Employee Member

Dated at Chicago, Illinois, January 31, 2003.

CERTIFIED MAIL #9589 0710 5270 1243 9637 22

September 22, 2023
7 Avenue de Lafayette
Boston, MA 02112-0996

Gary M. Richards
President BLET57
P.O. Box 52146
Boston, MA 02205

REF: J. T. Carmack's **Grievance for failure to rehire**

Dear President Richards:

This letter is to advise BLET57 that I have submitted a grievance to the following carriers: MBTA, Amtrak, MBCR (Veolia) and Keolis Commuter Services. The grievance demands reinstatement to my position of Locomotive Engineer with three weeks notice. As stated in the grievance, the grievance is necessary for BLET57 to overcome the organization's failures of its duties of fair representation. I hereby submit that I am a member in good standing of BLET57. Should I seek it, BLET57 assistance should be available to me pursuant to the BLET constitution section 36 entitled "**Grievances – Handled**" which states:

> Should a member present a grievance to his division for
> adjustment, he shall receive every assistance from the local and
> general committee if he is in good standing and not in arrears for
> dues or assessments when request is made.

The issues relative to the current grievance were submitted to BLET57 as a grievance filed with MBCR and submitted to BLET57 at a meeting held on or about June 13, 2003. In the 2003 meeting, the chair of the meeting, Dan Murphy, declared that BLET57 would not assist with my grievance because Murphy and Local Chairman Mike O'Bryan denied the legitimacy of my membership.

Gary Richards                                                    September 22, 2023
President – BLET57

The same grievance was also submitted to Mark Kenny a month later. I also asked
Kenny for assistance with a large number of grievances that the carriers had on
hold. In a letter responding to me, Kenny stated that he "fully intends" to give my
concerns "the attention and consideration they properly deserve".  His twenty years
silence has clarified the level of attention he believes section 36 of the BLET
constitution deserves.

Considering Murphy's notion of my status that he declared to the division on June
13, 2003, I refer the division to section 28 of the BLET constitution which states in
paragraph (h):

> (h) The following members shall be exempt from the payment of
> international dues and shall be exempt from Advisory Board, GCA,
> Legislative Board and division dues and/or assessments:
>                                              ...
> (6) Members who have been dismissed from service for thirty (30)
> days or more.
>
> (7) Members out of service due to sickness or injury exceeding
> thirty (30) days.

I remind the division that I was disqualified from service when Brother Gerard L.
DeModena, as Road Foreman, accused me of suffering from a "mental imbalance".
The current grievance claims company injury caused by the carriers' response to
DeModena's slander. I know of no basis for BLET57 to deny my standing.

The rules relied on in my grievance with the carriers are Rules 5, 21, 22 and 25. I
have again made the case that the relevant award of System Board of Adjustment
928 was untimely and irrelevant due to my medical status at the time and the
unavailability of my personal physician.

2

CERTIFIED MAIL #9589 0710 5270 1243 9637 22

Gary Richards                                          September 22, 2023
President – BLET57

I do not believe the possible success of my grievance requires processing assistance
from BLET57 or Kenny or the GCA. However, to the degree that BLET57 accepts my
legitimate standing as a member, I request that BLET57 please provide me with a
copy of the current BLET57 constitution, carrier agreements, BLET57 "members
only" access to the website and Keolis transition application and materials pursuant
to the Keolis/BLET implementing agreement.

For reference, a copy of the grievance to MBTA is enclosed on a flash drive with all
exhibits. In addition, you will also find the preambles to the Veolia and Amtrak
grievances on the flash drive.

Thank you for your consideration of this matter.

Fraternally,

Joseph T. Carmack
P.O. Box 120996
Boston, MA 02112-0996*
Phone: 617/504-0075
email: admin@devastationawareness.com

*when using 7 Avenue de Lafayette, please use Zip Code extension.

3

CERTIFIED MAIL #9589 0710 5270 1243 9637 22

October 10, 2023

7 Avenue de Lafayette
Boston, MA 02112-0996

Gary M. Richards
President BLET57
P.O. Box 52146
Boston, MA 02205

REF: J. T. Carmack's **Grievance for failure to rehire**

Dear President Richards,

I sent the following chat message on the website today.

"I am engaged in a number of proceedings to restore me to engine service. I sent
materials by certified mail addressed to President Richards at the PO Box to begin
informing BLET57 of the contents and status regarding those proceedings. If the
materials are not retrieved by October 12, I will make a second attempt. After that, I
will assume that BLET57 is not interested in what impact my endeavors will have on
the organization. Thanks."

Thank you for your consideration.

Joseph T. Carmack
P.O. Box 120996
Boston, MA 02112-0996*
Phone: 617/504-0075

email: admin@devastationawareness.com


*when using 7 Avenue de Lafayette, please use Zip Code extension.